# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00465-CV

---

**Heather Dawn Williams, Individually and as Wrongful Death Beneficiary and Representative of The Estate of Leilani Wittkohl, Deceased, Appellant**

**v.**

**CTRH, L.L.C., d/b/a Central Texas Rehabilitation Hospital; and Supriya Ailnani, M.D., Appellees**

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-006434, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Heather Dawn Williams, individually and as wrongful death beneficiary and representative of the Estate of Leilani Wittkohl (Williams), appeals the trial court's summary judgment in favor of CTRH, L.L.C. d/b/a Central Texas Rehabilitation Hospital (CTRH) and Supriya Ailnani, M.D. (Dr. Ailnani) in her suit against them alleging that their negligence in treating Leilani Wittkohl caused her death. After excluding Williams's expert testimony regarding the cause of Wittkohl's death, the trial court granted CTRH's and Dr. Ailnani's no-evidence motions for summary judgment. We will reverse and remand.

## BACKGROUND

Wittkohl died on November 10, 2016, while a patient at CTRH. In October 2018, Williams, Wittkohl's daughter, filed suit against CTRH and Dr. Ailnani claiming that their

negligence caused Wittkohl's death. Specifically, Williams alleged that Wittkohl was admitted to CTRH on November 1, 2016, for comprehensive rehabilitation due to complications from Parkinson's disease. Wittkohl also had a history of diabetes mellitus. Williams alleged that Wittkohl's blood sugar was reasonably well controlled from November 2 through November 4 by a prescribed regimen of insulin injections of both Insulin Detemir and Insulin Aspart. Williams alleged that, on November 4, Dr. Ailnani directed an increase in the dose of Insulin Detemir and a discontinuation of Insulin Aspart. Three days later, Dr. Ailnani directed another increase in the dose of Insulin Detemir. Williams alleged that the "abrupt increase and discontinuation of mealtime bolus of Insulin Aspart was inappropriate" and was made without appropriate monitoring of Wittkohl's blood glucose. Williams also alleged that the doctors, nurses, and health care providers caring for Wittkohl knew that "basal insulin should be monitored and titrated with fasting blood sugars" and that "mealtime insulin should be monitored with both preprandial and postprandial blood glucose levels." Despite this, Williams alleged, Dr. Ailnani failed to order any fasting blood glucose level during Wittkohl's stay and, in the early morning of November 10, Wittkohl was found unresponsive with low blood sugar levels of 27 at 5:40 a.m. and 20 at 5:49 a.m. Wittkohl was declared dead at 6:15 a.m. that day.

Williams alleged that CTRH was negligent through the acts of its employees, nurses, technicians, and staff by (1) failing to timely monitor Wittkohl's condition; (2) failing to question the increase in Insulin Detemir when Wittkohl's "condition changed"; and (3) failing to question the cessation of a mealtime bolus of Insulin Aspart when Wittkohl's "condition changed." Williams alleged that Dr. Ailnani, Wittkohl's attending physician, was negligent by (1) failing to monitor Wittkohl's fasting glucose levels; (2) increasing the dose of Insulin Detemir on November 4 and November 7; (3) discontinuing the mealtime bolus of Insulin Aspart

2

on November 4; and (4) failing to administer or order "appropriate fasting" of Wittkohl's blood sugars prior to increasing or decreasing any insulin dosage. Williams alleged that the negligence of CTRH and Dr. Ailnani caused Wittkohl's death.

CTRH and Dr. Ailnani each filed a no-evidence motion for summary judgment, arguing that no evidence supported the element of causation essential to recovery under Williams's claims. CTRH and Dr. Ailnani simultaneously filed a motion to strike Williams' expert opinions on causation, arguing that the opinions were unreliable and therefore inadmissible. In their motions for summary judgment, CTRH and Dr. Ailnani contended that if the court granted the motion to strike the expert's opinions on causation, there was no remaining evidence that any of their acts or omissions caused Wittkohl's death.

Williams retained one expert whose testimony bears on causation: Dr. Robert J. Fakheri, a physician specializing in general internal medicine. His expert report and deposition testimony is part of the record and was the focus of the no-evidence motion for summary judgment and the motion to exclude. Dr. Fakheri based his opinion on (1) copies of the CTRH medical records relating to Wittkohl; 2) an Austin Police Department report; (3) copies of a "Medical Opinion" from "Record Reform"; and (4) a copy of Wittkohl's death certificate. Based on his review of the records, Fakheri opined that Wittkohl's cause of death was cardiac arrest brought on by hypoglycemia, a condition that resulted from CTRH's and Dr. Ailnani's failure to adequately monitor and manage Wittkohl's blood sugar appropriately. Dr. Fakheri's opinion that Wittkohl was hypoglycemic before she died was based on the medical records indicating that she had low blood sugar levels of 27 at 5:40 a.m. and 20 at 5:49 a.m. He considered those readings along with a medical discharge summary prepared by Dr. Patrick Spicer that reported that:

3

[I]n the morning, on 11/10/16, [Wittkohl] was found to be unresponsive in her room; approximately 5 in the morning. She had a pulse at that time. Blood sugar measured in the mid 20s and she lost her pulse and CPR was initiated.

The records further indicated that the resuscitative efforts were unsuccessful and that the patient was then pronounced dead. Dr. Fakheri opined that Wittkohl's cause of death was cardiac arrest brought on by hypoglycemia. Dr. Fakheri explained that "[l]ow blood sugar, or hypoglycemia, causes cellular dysfunction. [] For heart tissue, low blood sugar can similarly cause arrythmias (abnormal heart rhythms), cardiac arrest, and death."

In their motions to exclude Dr. Fakheri's opinion, CTRH and Dr. Ailnani focused on Dr. Fakheri's having predicated his opinion on his understanding, gained from reviewing the medical records, that Wittkohl was alive when the blood sugar readings of 27 and 20 were taken the morning of November 10. CTRH and Dr. Ailnani maintain that Dr. Fakheri's opinion is unreliable because it is based on that assumption, with which they disagree. Rather, CTRH and Dr. Ailnani assert, there is no "reliable evidence" to support Dr. Fakheri's assumption that the readings represent Wittkohl's blood glucose levels before she died.[1]

After a hearing, the trial court granted CTRH's and Dr. Ailnani's motions to exclude Dr. Fakheri's expert testimony as unreliable. The court then granted CTRH's and Dr. Ailnani's no-evidence motions for summary judgment on the ground that Williams had presented no evidence on the causation element of her negligence claims. Williams then

---

[1] In their motion to exclude Dr. Fakheri's testimony, CTRH and Dr. Ailnani state that "[b]oth sides agree with the premise that if these blood sugar levels were taken after the patient was pulseless and circulation had ceased, then those levels would not be reliable indication of what [Wittkohl's] blood sugar had been prior to her death." In his deposition, Dr. Fakheri agreed that a person's blood sugar levels drop quickly after they have no pulse or circulation and that if Wittkohl had died before the blood sugar readings were taken, they would not be indicative of her blood sugar level while she was still alive.

4

perfected this appeal, asserting that the trial court erred in excluding Dr. Fakheri's opinion testimony as unreliable and by granting the no-evidence motions for summary judgment.

## DISCUSSION

A party may move for summary judgment, after adequate time for discovery, "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). The court must grant such a "no-evidence" motion unless the non-moving party responds with "evidence raising a genuine issue of material fact." *Id.* Appellate courts review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In so doing, we examine the evidence in the light most favorable to the non-moving party, indulging reasonable inferences and resolving doubts against the party seeking summary judgment. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

The issue before this Court is whether the plaintiff's evidence raised a genuine issue of material fact on causation, which is an essential element of the plaintiff's claims on which she bears the burden of proof. To survive summary judgment, the plaintiff's causation evidence must raise a genuine issue of material fact as to whether it was more likely than not that hypoglycemia caused Wittkohl's death.

The central inquiry—in the context of either a motion to strike the evidence or a summary-judgment motion—is whether the plaintiff's expert offered *reliable* evidence of causation. As for the motion to strike, "[a]dmission of expert testimony that does not meet the reliability requirement is an abuse of discretion." *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006). As for the summary-judgment motion, if the expert's opinion

5

is not reliable, it is no evidence and will not defeat a no-evidence motion for summary judgment. *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 410 n.23 (Tex. 2016) ("Unreliable expert testimony is legally no evidence."); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 713 (Tex. 1997) ("If the expert's scientific testimony is not reliable, it is not evidence."). To resolve this appeal, we consider whether the expert opinion constitutes reliable evidence of causation sufficient to overcome CTRH's and Ailnani's motions for summary judgment.

A witness may be qualified to testify as an expert based on his "knowledge, skill, experience, training, or education." Tex. R. Evid. 702. Expert testimony on scientific matters—such as the cause of a person's death—must be "grounded 'in the methods and procedures of science.'" *E.I. du Pont de Nemours & Co v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)). Unreliable testimony, by contrast, includes that which "is no more than 'subjective belief or unsupported speculation.'" *Robinson*, 923 S.W.2d at 557 (quoting *Daubert*, 509 U.S. at 590). "If the expert brings only his credentials and a subjective opinion, his testimony is fundamentally unsupported and therefore is of no assistance to the jury." *Cooper Tire*, 204 S.W.3d at 801. The mere *ipse dixit* of the expert—i.e., asking the jury to take the expert's word for it because he is an expert—will not suffice. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). Instead, an expert's conclusions must have a reliable basis other than the expert's say-so. And "if no basis for the [expert] opinion is offered, or the basis provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence." *Id.* at 818.

"In determining the reliability of expert testimony, courts must consider not just whether the expert's methods are grounded in science, but also whether the data to which the expert applies his methods are reliable." *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 73-74 (Tex.

6

2023). "If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable." *Havner*, 953 S.W.2d at 714. Moreover, "an expert's testimony is unreliable even when the underlying data are sound if the expert draws conclusions from that data based on flawed methodology. A flaw in the expert's reasoning from the data may render reliance on a study unreasonable and render the inferences drawn therefrom dubious." *Id.* Likewise, "if an expert's opinion is based on certain assumptions about the facts, we cannot disregard evidence showing those assumptions were unfounded." *City of Keller*, 168 S.W.3d at 813.

Expert testimony is also unreliable if "there is simply too great an analytical gap between the data and the opinion proffered." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 727 (Tex. 1998). "We are not required . . . to ignore fatal gaps in an expert's analysis or assertions that are simply incorrect." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 912 (Tex. 2004). "Analytical gaps may include circumstances in which the expert unreasonably applies otherwise sound principles and methodologies, the expert's opinion is based on assumed facts that vary materially from the facts in the record, or the expert's opinion is based on tests or data that do not support the conclusions reached." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 349 (Tex. 2015) (citations omitted).

Here, CTRH and Dr. Ailnani argue that Dr. Fakheri's opinion is unreliable because he predicated it on a fact that varied from facts in the record; specifically, that the tests showing Wittkohl's blood glucose levels to be at 27 and 20 were taken before she died. As previously noted, however, Wittkohl's medical records included Dr. Spicer's medical discharge summary, which stated that Wittkohl:

7

was found to be unresponsive in her room; approximately 5 in the morning. She had a pulse at that time. Blood sugar measured in the mid 20s and she lost her pulse and CPR was initiated.

Thus, there was evidence in Wittkohl's medical records to support Dr. Fakheri's assumption that Wittkohl was alive when the blood glucose readings were taken. CTRH and Dr. Ailnani counter, however, that (1) there is other evidence in the record showing that Wittkohl had in fact died before the blood glucose readings were taken and (2) in June 2022, almost four years after this litigation commenced, Dr. Spicer provided an affidavit in which he attested that he did not have first-hand knowledge of the events that occurred the morning of November 10th and that, although he dictated the medical discharge summary noting that Wittkohl had a pulse when her blood sugar was measured, he did not know where that information came from. Dr. Spicer also stated in his affidavit that, after reviewing CTRH records, he believes the statements regarding Wittkohl having a pulse to be inaccurate. CTRH and Dr. Ailnani argue that Dr. Fakheri's opinion is unreliable in light of Dr. Spicer's affidavit questioning the accuracy of the medical discharge summary he prepared at the time of Wittkohl's death.

"[W]hen expert testimony is involved, courts are to rigorously examine the validity of the facts and assumptions on which the testimony is based." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009). When an expert's opinion is predicated on a particular set of facts, those facts need not be undisputed. *Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 833 (Tex. 2014). An expert's opinion is only unreliable if it is contrary to actual, undisputed facts. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). In this case, Dr. Fakheri's opinion is not contrary to actual, undisputed facts. Dr. Spicer's medical discharge summary provides some evidence, despite his

8

later affidavit to the contrary, to support Dr. Fakheri's assumption that Wittkohl was alive when the blood glucose readings were taken on the morning of November 10th. Thus, Dr. Fakheri's opinion was not based on assumptions totally unsupported by the evidence.

## CONCLUSION

Dr. Fakheri's opinion that Wittkohl's death was caused by hypoglycemia was based on facts that, although disputed, were supported by the record. Therefore, the trial court erred in excluding Dr. Fakheri's expert causation testimony on the ground that it was unreliable. Because Williams presented some evidence on the causation element of her negligence claims, the trial court erred in granting CTRH's and Dr. Ailnani's no-evidence motions for summary judgment. We reverse the trial court's judgment and remand the cause for further proceedings.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Smith

Reversed and Remanded

Filed: January 5, 2024